NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0283n.06
Filed: April 13, 2005

No. 03-4372

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TONIN FILIPI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM THE |
| v. | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: MOORE and SUTTON, Circuit Judges; CARMAN, Judge.[*]

SUTTON, Circuit Judge. Tonin Filipi is a twenty-seven-year-old Albanian citizen who seeks asylum, withholding of removal and protection under the Convention Against Torture. The Immigration Judge (IJ) found that Filipi's testimony in support of his application was not credible and alternatively concluded that, even if it were credible, the events he described do not rise to the level of past persecution, create a well-founded fear of future persecution or provide a basis for relief under the Convention Against Torture. The Board of Immigration Appeals (BIA) summarily affirmed the IJ's decision, and we now deny Filipi's petition for review.

---

[*]The Honorable Gregory W. Carman, Judge for the United States Court of International Trade, sitting by designation.

I.

On January 21, 2001, Filipi entered the United States in Hidalgo, Texas, without inspection. When the government started removal proceedings against him, he conceded his removability but filed an application for asylum, for withholding of removal and for protection under the Convention Against Torture.

His application and testimony described the following events and explanations for his claims. In February 1994, his father was "assassinated as an act of vengeance because [his] father's father killed a man during the Second World War." JA 168. His father, Filipi claimed, had been active in the Democratic party, and the family's Socialist neighbor was responsible for his father's death.

The assassination sparked a "blood feud" between Filipi's family and the neighbor's family. The authorities placed the neighbor in jail for two months after the murder, but released him after he paid government officials. Once the neighbor was released from jail, he feared that a member of Filipi's family would retaliate against him (or his family) because he had killed Filipi's father; as a result, he announced to people in the community that he was prepared to kill another member of the Filipi family before the Filipis killed a member of his family.

Despite these threats, Filipi and his family—his mother, six brothers and three sisters— remained in the same village for two years after his father's death. During those two years, the Filipi family did not have any contact with the neighbor, and the neighbor did not in fact attempt to harm any member of the family.

In February 1996, Filipi and his family moved to another village about 40 minutes away. Even in this new village, however, Filipi and his family continued to live in fear of the neighbor's family and of the threat of a preemptive murder.

After national elections, the Socialist party came into power in Albania in 1997. In June or July of 1997, Filipi was arrested because he was a member of the Democratic party and because he had protested the elections. He was detained for three to four days, then released. After the Socialists took control of the government in 1997, they harassed his family "more and more." JA 99. In addition to his arrest and detention, during which he does not claim to have been beaten or threatened, the Socialist party told him that his neighbor was going to kill him, as a result of which he "was scared all the time." JA 107.

At some point in 1997, Filipi, his mother, six brothers and two of his sisters fled to Greece; one sister remains in Albania. In 2000, Filipi returned to Albania for four months, apparently in order to obtain a passport to enter the United States. During his time in Albania, Filipi saw his father's killer from a distance but otherwise had no contact with him. In early 2001, Filipi entered the United States.

In his application, Filipi stated that if he returns to Albania his Socialist neighbor will "make sure [he is] killed to satisfy the vengeance of [his] family." JA 170. And if the neighbor does not kill him, he testified, "the socialist[s] that are in power" will do so. JA 101. He also acknowledged

during his testimony that one reason he came to America was to have a better opportunity to provide financial support for his family living in Greece.

The IJ was unwilling to credit Filipi's testimony and, in the alternative, concluded that even if Filipi were credible, he did not demonstrate past persecution based on any cognizable ground. In addition, the IJ found that Filipi had not demonstrated that it is more likely than not that he would be persecuted or tortured if he were to return to Albania. Invoking the streamlining procedures of the BIA, one member of the BIA affirmed the IJ's decision. *See* 8 C.F.R. § 1003.1(e)(5).

## II.

Filipi raises two arguments on appeal. He first claims that the government's failure to provide accurate and competent interpretation services during the asylum hearing violated his due process rights under the Fifth Amendment. He then claims that the IJ erred in denying his application. Neither argument is persuasive.

We give de novo review to the constitutional claim. *Castellano-Chacon v. INS*, 341 F.3d 533, 552–53 (6th Cir. 2003). We review the BIA's determination under the "substantial evidence" standard. The BIA's determination whether the petitioner was persecuted and whether he has a well-founded fear of future persecution must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) ("[Section] 1252(b)(4)(B) basically codifies the Supreme Court's substantial evidence standard."); *see also INS v. Elias-Zacharias*, 502 U.S. 478, 483–84 (1992) (a court must

uphold the Board's determination unless the evidence presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."); *Gjokic v. Ashcroft*, Nos. 02-3915, 02-3917, 2004 WL 1491638 (6th Cir. June 29, 2004). We will reverse where the evidence in the record "not only supports a contrary conclusion, but indeed *compels* it." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (quotation marks omitted).

A.

In assessing the due process claim, we must consider whether the IJ and BIA afforded Filipi "a full and fair hearing." *Castellano-Chacon*, 341 F.3d at 553; *see also Amadou v. INS*, 226 F.3d 724, 727 (6th Cir. 2000); *Gonzales v. Zurbrick*, 45 F.2d 934, 936 (6th Cir. 1930). As Filipi sees the matter, several portions of the transcript establish that the interpreter was incompetent, making the hearing anything but fair. The poor translation skewed his testimony, he adds, and "deprived [him] of coming across to the court in [a] genuine, sincere, and credible way." Filipi Br. at 13.

In one respect, Filipi is right. Several passages in the transcript contain awkward sentences and broken or incorrect English. The problem, however, is that the IJ did not hinge its opinion on how the facts and allegations in his testimony were expressed but on the weaknesses and inconsistencies of the factual allegations themselves, and Filipi has failed to show how the translation caused the IJ to misapprehend material facts. The IJ, for example, noted that Filipi never made it clear whether the "blood feud"—a critical premise of his claim—began with his father's father killing a man in World War II (as his application indicated) or whether it began with the killing of his father

by their Socialist neighbor in February 1994 (as his testimony indicated). The IJ also legitimately became skeptical about Filipi's fear of being killed by his ex-neighbor once it was learned that the Filipi family had lived unharmed in the same Albanian village with the same neighbor for two years after his father had been killed. And the IJ fairly wondered how Filipi could reasonably fear returning to any part of Albania in view of the fact that he voluntarily returned in 2000 (while the Socialists were in power) and stayed for four months, unharmed by the neighbor or by any members of the Socialist party.

While Filipi persists that the translation is the primary reason that the IJ made an adverse credibility determination against him, he has not shown how the translator misinterpreted any facts that were material to the IJ's conclusions. At most, he directs us to passages of the transcript that show awkward translations. But he does not explain how these passages should have been interpreted and above all he does not explain how any of the passages, if interpreted correctly, would have eliminated the inconsistencies identified by the IJ or would have rectified the implausible nature of some of his allegations.

Nor does *Amadou*, 226 F.3d 724, in which the court ordered that the applicant be given a new hearing due to interpretation problems, alter this conclusion. The interpreter in that case had familiarity with the applicant's language (Fulani) but did not have any familiarity with the dialect of the language spoken by the applicant. *Id.* at 725. During the hearing, the interpreter informed the IJ three times that she was having difficulty translating Amadou's responses. *Id.* at 727. Nonetheless, the IJ told the interpreter to "just translate what he said even if it doesn't make sense."

*Id.* No such problem arose in this case, as the interpreter never claimed an inability to understand Filipi or the language he was speaking. The record in *Amadou* also indicated that "the interpreter's faulty translation likely played a significant part in the judge's credibility determination." *Id.* Again, no such problem occurred here. In the end, Filipi has failed to establish that the interpretation services provided at his asylum hearing violated his rights under the Due Process Clause of the Fifth Amendment.

B.

To be eligible for asylum, Filipi must show that he qualifies as a refugee—one who "is unable or unwilling to return to" his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden falls on the applicant to show that he or she meets this definition, *see Mikhailevitch*, 146 F.3d at 389, and the applicant has two options in trying to make this showing. On the one hand, an applicant may prove that "he or she has suffered persecution in the past," at which point there is a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may rebut that presumption by showing that conditions in the petitioner's country have changed so "that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A). On the other hand, the applicant may show that he or she has a well-founded fear of future persecution, 8 C.F.R. § 208.13(b)(2), which "must be both subjectively genuine and objectively reasonable," *Mikhailevitch*, 146 F.3d at 389.

Filipi's main claim for asylum proceeds along these lines—his father was killed because he was a Democrat and he fears that members of the Socialist Party, including most notably his former neighbor, will kill him if he returns. His first problem in bringing this claim is that the IJ did not credit his testimony in view of the inconsistencies of some aspects of his testimony and the implausibility of other components of his testimony. Substantial evidence, as we have shown, supports that finding.

Second, even if Filipi's testimony were believed, his claim does not establish past persecution or a well-founded fear of future persecution. As for past persecution, Filipi's primary concern was that he heard rumors that his neighbor wanted to continue the "blood feud" with his family. Yet the neighbor never personally threatened his family or harmed them, and nothing untoward happened during the two years that Filipi and his family remained in the same village as the neighbor. And while Filipi was arrested for participating in Democratic demonstrations and detained for three days, he does not claim that he was beaten or harmed. These circumstances do not demonstrate past persecution.

Nor has he established a well-founded fear of future persecution. Filipi claims that because the Socialists remain in power, there is a greater chance that he will be killed by the neighbor because the neighbor will have a greater ability to carry out his threats. Yet Filipi has given us no reason to believe that the neighbor will even learn that Filipi has returned to the country if he relocates to another village. And if Filipi does return to his original village, he has not demonstrated that the neighbor is still looking to kill or harm him—again, because his family lived unharmed in the same

village as the neighbor for two years and the neighbor never personally contacted the family, much less directly threatened them. In the final analysis, Filipi has not shown that if he returns to Albania, he has a well-founded fear that he will be singled out and persecuted for his political beliefs.

Having failed to meet the standards for asylum, Filipi necessarily fails to meet the more stringent standards for withholding of removal. *See Mikhailevitch*, 146 F.3d at 391. Nor, for many of the reasons noted above, has petitioner credibly shown that it is more likely than not that he will be tortured if he is removed to Albania. *See* 8 C.F.R. § 1208.16(c)(2). As such, he is not eligible for protection under the Convention Against Torture.

III.

For these reasons, we deny the petition for review.