NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0333n.06
Filed: April 28, 2005

No. 04-3356

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

WMEEDH KOODS,

     Petitioner-Appellant,

v.

ALBERTO GONZALES, ATTORNEY
GENERAL OF THE UNITED STATES,

     Respondent-Appellee.

ON APPEAL FROM THE
BOARD OF IMMIGRATION
APPEALS

_____/

Before:     MARTIN, COOK, and LAY,* Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. Wmeedh Koods, a native citizen of Iraq, appeals the denial of his application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture. For the following reasons, we AFFIRM the judgment of the Board of Immigration Appeals.

**I.**

     Koods entered the United States without a valid entry document on or about June 30, 2001. Koods concedes that he is removable as charged, but filed an application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture. Koods alleged that he is a

_____

*The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Chaldean Christian, that while in Iraq he suffered two arrests related to his religion, and that he was beaten while in custody. Koods allegedly fled Iraq in 1999, spent a few days in Jordan, two and a half years in Thailand and Malaysia, traveled to several other countries, and wound up in the United States in 2001.

At his hearing before the immigration judge, Koods testified that on March 7, 1998, when he was leaving college and going home, the Iraqi police stopped him and asked for his identification. The police interrogated him as to why he had not reported for compulsory military service, and Koods replied that he was a student and therefore exempt from service. Koods claimed that he was then jailed for seven days, beaten, and interrogated. Koods alleged that he had to bribe a guard in order to contact his family to inform them of where he was being held. Koods did not claim that this alleged incarceration had anything to do with his religious affiliation.

Koods also alleged that around the Christmas holiday in 1998 he and his family were at church when members of the Fedayeen Saddam, hooded and dressed in black, entered the church, attempted to intimidate the churchgoers, and accused them of being American sympathizers. Koods alleged that he was arrested, detained for three days, and beaten during his incarceration.

Koods's aunt also testified on his behalf. Her testimony reflected minor discrepancies from Koods's testimony. The immigration judge denied Koods's applications and requests for relief, finding that Koods and his aunt were not credible and that, even assuming the alleged incidents did happen, they were insufficient to establish that he was persecuted in Iraq. The immigration judge further found that Koods had not established that he had been subjected to a pattern or practice of persecution such that a reasonable person in his circumstances would fear persecution if returned

to Iraq. Finally, the immigration judge stated that even if Koods were eligible for relief, the court would not exercise its discretion to grant such relief because Koods could have applied for asylum in Thailand where he lived for more than two years. The Board of Immigration Appeals affirmed without opinion.

Koods now appeals, asserting that problems in translation at the hearing denied him his Fifth Amendment due process right to be heard regarding his claim for asylum. Koods has not asserted any distinct errors regarding the denial of his application for withholding of removal or relief pursuant to the Convention Against Torture.

## II.

In *Gonzales v. Zurbick*, 45 F.2d 934 (6th Cir. 1930), this Court found a due process violation stemming from a faulty translation by an incompetent interpreter. The alien in *Gonzales* was not represented by counsel and complained that she could not understand the interpreter. Moreover, the record contained test results establishing that the interpreter "was unable to interpret . . . . in a manner calculated to insure the alien a fair hearing," and the alien identified specific errors in the record that clearly prejudiced her case. *Id.* at 936-37. This Court held that in deportation hearings, because of the important function the interpreter serves, the capability of an interpreter "should be unquestioned." *Id.* at 937.

More recently, in *Amadou v. INS*, 226 F.3d 724 (6th Cir. 2000), this Court again found a due process violation due to the incompetence of an interpreter. Amadou had argued that "the interpreter's difficulty translating the questions and answers prejudiced him by causing the immigration judge and Board to find that he was not credible." *Id.* at 726. In *Amadou*, "the

immigration judge and the Board were on notice that there was a problem with the interpreter," the interpreter stated several times that "[t]he interpreter doesn't understand" and "[t]he interpreter is having some problems here with some semantics." *Id.* at 727. The immigration judge frequently instructed the interpreter to "[j]ust translate what he said even if it doesn't make sense," and the transcript demonstrated that the interpreter was not familiar with vocabulary and terminology essential to Amadou's claim. Amadou submitted an affidavit documenting errors in translation, and the tapes of the hearing evidenced Amadou's difficulties in understanding the interpretation of the court's questions, and some of the questions were actually "indiscernible." *Id.* at 727-28. There were additional exchanges not transcribed between Amadou and the interpreter, further evidencing an inability to understand one another. *Id.* at 728. Moreover, this Court noted that the "immigration judge based her decision to deny Amadou's applications [for relief] *solely* on her determination that Amadou's responses during the hearing rendered him not credible." *Id.* (emphasis added). This Court held that "*Gonzales* therefore mandates a finding that Amadou was denied his right to a full and fair hearing because the interpreter's questionable translations formed the basis of the Board's decision to deny his applications." *Id.*

In this case, Koods points only to an isolated statement by the interpreter at the close of the hearing. The immigration judge asked whether Koods had testified in Arabic or Chaldean, and the interpreter replied: "Switching C[h]aldean to Arabic, Your Honor, that's what threw me off, that's why I was, I don't speak C[h]aldean. I'm sorry, Your Honor, I'm sorry. I failed to mention to the court that he was switching from C[h]aldean to Arabic, vice versa." Koods asserts that this demonstrates that there were problems with the translation and therefore he was denied due process.

Koods, however, fails to point to any instances of improper translation. Furthermore, Koods's lawyer at the hearing was fluent in *both* Arabic and Chaldean, and objected only once to a minor disagreement as to whether Koods said "Christmas day" or "Christmas Eve." It was clarified that Koods said "it was on the evening of Christmas Eve into the morning of Christmas day." Koods's attorney mentioned to the court that he "ha[d] a little bit of advantage over [Koods and the interpreter], I can speak the both." It is highly unlikely that Koods's attorney would have sat through the hearing and not objected to material mistranslations, but interjected to clarify the Christmas Eve/Day misunderstanding.

Koods has simply failed to point to any mistranslations in the record, and instead essentially asks this Court to assume, based on one isolated and ambiguous statement of the interpreter, that mistranslations occurred and denied him due process. We need not engage in such speculation. While the immigration judge found Koods not credible, it assumed for purposes of its decision that the two incidents of incarceration occurred. Even assuming these incidents occurred, however, the immigration judge found that they failed to establish persecution based on his religion, and failed to demonstrate that a reasonable person would fear persecution upon return. The first incident, the immigration judge found, had nothing to do with his faith and instead was based on his alleged failure to report for military service. While the second incident could, in the immigration judge's view, demonstrate religious persecution, it was an isolated incident and not sufficient to demonstrate a reasonable fear in light of Koods's otherwise relatively easy and middle-upper-class life in Baghdad.

In *Amadou*, we stated that due process is denied when "the interpreter's questionable translations form[] the basis of the Board's decision to deny [a petitioner's] applications." *Amadou*, 226 F.3d at 728. In the flawed translation context, therefore, a petitioner must demonstrate (1) translation errors, and (2) that those errors formed the basis of the immigration judge or Board's decision to deny relief, i.e., prejudice. *Id.* Koods has failed to meet the first prong of the test by simply not identifying any instances of mistranslation in the record, and thus, there is no evidence upon which this Court could conclude that Koods suffered a denial of due process.

### III.

For the foregoing reasons, we AFFIRM the judgment of the Board of Immigration Appeals.