**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0145n.06**
**Filed: February 24, 2006**

**No. 05-3096**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GIGUIBA MAKHALOU, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, Attorney General | ) | |
| | ) | |
| Respondent. | ) | |

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Giguiba Makhalou, a native of Guinea, challenges the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An immigration judge (IJ) denied his application on credibility grounds. Because Makhalou suffered no due process violation and because substantial evidence supports the Board of Immigration's (BIA) decision, we deny the petition for review.

I

On May 24, 2001, Makhalou entered the United States without a valid entry document. When the government initiated removal proceedings against him, Makhalou conceded removability but applied for asylum, withholding of removal, and protection under CAT. In his application, Makhalou described the following events to support his claim.

Makhalou and his father were members of the Rassemblement Pour La Guinee (RPG), a political party headed by Alpha Conde. On December 14, 1998, Conde lost the presidential election to Lansana Conte of the Party for Unity and Progress (PUP). Following the election, Conde was arrested. Makhalou's father was also arrested, apparently for supporting Conde during the election.

While his father was in jail, Makhalou opened his father's shop, and within minutes, a group of people appeared at the shop, ordering Makhalou to close it, insulting the customers, and throwing stones. When Makhalou tried to stop them, violence erupted, and the Beret Rouge, a government security force, arrived at the scene to investigate. As they arrived, the crowd fled and Makhalou fell, injuring his left hand. He was then arrested and detained at Camp Alpha Yaya.

At Camp Alpha Yaya, Makhalou was interrogated, tortured in an electric chair, beaten brutally once a week, and given food once every three days. He was also forced to sign a paper declaring that he intended to undermine Conte's presidency and that he was at his father's shop on the day of his arrest as part of a group supporting Conde. After spending a year incarcerated at Camp Alpha Yaya, Makhalou escaped by pretending to be dead in his cell. Believing that he was dead, the soldiers disposed of his body in a body bag. He left Guinea for the United States on May 23, 2001. In his application, Makhalou alleged that if he returned to Guinea, he would be arrested, imprisoned, tortured, and sexually abused.

After a hearing, the IJ denied Makhalou's application and requests for relief, finding his testimony not credible. Makhalou appealed to the BIA, challenging the adverse credibility

determination and claiming that the interpreter mistranslated his testimony during the asylum

hearing in violation of his Fifth Amendment due process rights.  The BIA affirmed the credibility

determination and rejected the due-process claim.  On appeal to this court, Makhalou reasserts the

same arguments.

II

We review the constitutional claim de novo, *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir.

2005), and review the BIA's adverse credibility determination for substantial evidence, reversing

only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. §

1252(b)(4)(B); *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

A.

In reviewing Makhalou's due-process claim, we consider whether the IJ afforded him "a full

and fair hearing."  *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003).  Makhalou

contends that several passages in the transcript establish that the interpreter was incompetent,

depriving him of a fair hearing. The poor translation, he explains, precluded him from "reasonably

presenting his case."

We discern no translation error.  Although Makhalou directs us to passages of the transcript

where his responses to questions are awkward and inconsistent, we are satisfied that those responses

are not the result of translator incompetence.  Makhalou, moreover, fails to explain "how these

passages should have been interpreted" and "how any of the passages, if interpreted [differently], would have eliminated the inconsistencies identified by the IJ or would have rectified the implausible nature of some of his allegations." *Filipi v. Gonzales*, 127 Fed. Appx. 848, 851 (6th Cir. 2005). Because Makhalou failed to establish that the interpretation services provided to him denied him a full and fair hearing, we reject his due-process claim.

B.

Makhalou next challenges the IJ's adverse credibility determination. In reviewing credibility determinations, we consider only those discrepancies between Makhalou's testimony and his application "that go to the heart of [his] claim. They 'cannot be based on an irrelevant inconsistency.'" *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004)). Though minor and irrelevant inconsistencies may not constitute the basis for an adverse credibility determination, the "cumulative effect" of minor inconsistencies may lend support to other grounds for an adverse credibility determination. *Yu*, 364 F.3d at 704.

Makhalou claims that the IJ erred by basing the credibility determination on discrepancies that were immaterial to his claim. The IJ noted several inconsistencies between Makhalou's application and testimony, but relied upon four in particular: (1) whether Makhalou fell because he tripped over a woman or because a soldier pushed him; (2) whether his mother was a PUP member;

(3) whether he went directly to Camp Alfa Yaya after being arrested; and (4) whether he was arrested on December 15, 2000.

First, Makhalou alleged in his application that, upon fleeing his father's shop, a soldier pushed him, causing him to fall and injure his hand. The IJ found that this allegation contradicted Makhalou's testimony at the asylum hearing that he fell by tripping over a woman. Although a clear discrepancy exists between the two accounts, the IJ erred in relying upon the discrepancy; whether a soldier pushed Makhalou or he tripped over a woman does not bear upon his central claim that he and his father were imprisoned and beaten for supporting the RPG. *See Sylla*, 388 F.3d at 926 (holding that the court considers discrepancies that "go to the heart" of the alien's claim). Nor can changing his testimony from being pushed by a soldier to tripping over a woman be considered an attempt to embellish his past persecution to increase his chances of being granted asylum. *See Daneshvar*, 355 F.3d at 623 ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.") (quotation marks and citations omitted).

Second, the IJ found it not credible that Makhalou alleged in his application that his mother was a member of the Union for Progress and Renewal (UPR), but later testified at the removal hearing that his mother was a member of the PUP. Whether his mother was a member of the PUP or the UPR is immaterial to Makhalou's claim of having been imprisoned and beaten for his and his father's support of the RPG, and thus is insufficient to undermine that claim. *See Sylla*, 388 F.3d at 926 (deciding that the IJ may not base a credibility determination on irrelevant inconsistencies).

Third, the IJ found that Makhalou alleged in his application that "he went directly to Camp Alfa [Y]aya after his arrest," but contradicted this statement when he testified at the hearing that he was held in a shack for three days before being transferred to Camp Alfa Yaya. The record reflects, however, that the two statements are consistent. In his application, Makhalou does not say that he went *directly* to Camp Alfa Yaya after his arrest. And although Makhalou omitted that he was held in a shack for three days before being arrested, this omission in no way indicates that Makhalou's testimony was untruthful. *See Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005). Omissions of details from a petitioner's application that are more fully explained at a hearing are not inconsistencies upon which an IJ can rest an adverse credibility determination. *Id.* at 638.

Fourth, the IJ found Makhalou's testimony regarding the date of his arrest inconsistent. During the removal hearing, Makhalou initially testified that he was arrested on December 15, 2000. He later contradicted this account by testifying that he left Camp Alfa Yaya on May 18, 1998, that he was arrested *after* his father's arrest in December 1998, and that he went to Camp Alfa Yaya on May 15, 1998 and left on May 18, 2001. These inconsistencies are not only clear, but are also material, bearing directly upon the persecution Makhalou claims to have suffered. Such inconsistencies are a subject upon which the IJ properly relied in determining that Makhalou lacked credibility.

In light of our finding that the inconsistencies are central to Makhalou's claim, we cannot say that any reasonable adjudicator would be compelled to reach a credibility determination contrary to that of the IJ. *See* 8 U.S.C. § 1252(b)(4)(B); *Yu*, 364 F.3d at 703. The inconsistencies suffice to

uphold the adverse credibility determination. *See Madilu v. Gonzales*, 155 Fed. Appx. 874, 879 (6th Cir. 2005) ("Even were this Court to conclude that the immigration judge had unjustifiably relied on these difficulties with Petitioner's application, the clear impeachment of Petitioner on the stand would be sufficient, standing alone, for a trier of fact to make an adverse credibility determination."). Accordingly, we affirm.

## C.

Makhalou next argues that the IJ erred by denying him asylum and withholding of removal on the basis of past persecution. To be eligible for asylum, Makhalou must show that he meets the statutory definition of a refugee: one who "is unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden falls on Makhalou, as the applicant, to show that he meets this definition.

Makhalou contends that he meets the definition because he proved he suffered past persecution and therefore is entitled to a presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). Neither the IJ nor the BIA, however, credited his testimony of past persecution, and because substantial evidence supports that determination, Makhalou failed to meet the standards for asylum relief. Having failed to meet the standards for asylum, Makhalou necessarily fails to meet the more stringent standards for withholding of removal. *Hassan v.*

*Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). We therefore affirm the denial of asylum and withholding of removal.

D.

Finally, we reject Makhalou's assertion that the IJ erred by failing to analyze his eligibility for CAT relief. First, the IJ explicitly discussed in his opinion that even if Makhalou were credible, he failed to meet his burden of establishing eligibility for CAT relief. Second, the IJ predicated his decision to deny Makhalou CAT relief on his adverse credibility determination, a determination supported by substantial evidence. Lack of credibility is dispositive of all forms of relief, including CAT relief. *Id.* Simply put, the record does not support Makhalou's assertion.

VI

For these reasons, we deny the petition for review.