**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0325n.06

No. 10-3405

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 23, 2012*

LEONARD GREEN, Clerk

IHOR POPOVYCH,                              )
                                           )
    Petitioner;                            )
                                           )    ON PETITION FOR REVIEW
    v.                                     )    OF AN ORDER OF THE
                                           )    BOARD OF IMMIGRATION
ERIC H. HOLDER, JR, Attorney General,      )    APPEALS
                                           )
    Respondent.                            )
                                           )

BEFORE: GILMAN, ROGERS, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge. While living in Ukraine, Ihor Popovych was a police officer who investigated organized crime and government corruption. He petitions for review of the Board of Immigration Appeals order affirming the immigration judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. Substantial evidence however supports the Board's decision that Popovych lacks a well-founded fear of future persecution based on a ground protected by the Immigration and Nationality Act. Popovych has also not shown that any alleged translation errors prejudiced his case.

I.

Ihor Popovych is a native and citizen of Ukraine. While living in Ukraine, he was employed as a police officer, and from 1999 through 2003, he worked in a division that investigated organized

crime. From 2003 to 2004, he was the chief of the ministry of internal affairs for economic and corruption crimes.

Popovych first entered the United States on August 22, 2004 on a visitor's visa. One year later, he applied for asylum, withholding of removal, and voluntary departure under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158, 1231(b)(3), and 1229c(b), and protection under the Convention Against Torture (CAT), 8 C.F.R. § 1208.16(c). He was issued a notice to appear, and between November 2005 and March 2008 the immigration judge (IJ) assigned to his case held a series of hearings. The IJ also afforded Popovych the opportunity to submit a supplemental asylum application, to make changes and corrections to it, and to submit various exhibits in support of his application.

At the hearings, Popovych testified that his work in the organized crime unit often involved investigating accusations of government corruption. He said that he would often be pressured by his supervisors to start and stop certain investigations, presumably for political reasons. If he refused, his superiors would find ways to prevent him from working on the cases, and he sometimes received demerits. Popovych also testified, that in a number of cases he investigated, key figures would be killed in suspicious car crashes. He said that after he arrived in the United States, he was told by friends that, in one of the cases he had been investigating, suspects had begun to accuse him of illegal and unethical activities. He also heard from his wife that two unknown men had asked for Popovych at his house, saying that he was "creating big problems" and that they would "finish this matter." Popovych testified that he was convinced that if he returned to Ukraine, he could be jailed because of his investigatory work, whether by disapproving superiors in the police department or corrupt government officials still in power for whom he had caused trouble. He testified that he

feared for his life. Volodymyr Rakovskyy, who also once worked in the Ukranian police department, testified and corroborated that Popovych had been pressured by his superiors to direct investigations in specific ways. Rakovskyy also testified that police officers connected to Popovych's department who did not follow such directions would sometimes be either killed in staged car accidents or beaten.

There was a Ukranian-language translator present at the hearings. At one point early in the proceedings conducted on September 10, 2007, as Popovych was outlining his schooling and career, Popovych's lawyer, Bradley Maze, objected to the proceedings. He did so on the ground that "a lot is being lost" in the translation, based on his speaking with a colleague who understood Ukranian and was present in the courtroom, and Maze asked that the interpreter be instructed to stop the respondent so that the interpreter could translate more often. The IJ asked Maze to specify what was being lost, to which Maze replied, "[i]t appears there may be some narration because the responses are very long" and that "some of the details perhaps are not being translated." The IJ concluded that "[i]f you can't tell me what was missed, I don't find your objection to be duly noted . . . particularly when you say [a colleague] speaks the Ukranian language." The IJ told the interpreter to "instruct the respondent to speak in shorter sentences" and to "tell him to stop so you can make sure you're interpreting the exact sentences . . . so the record can be protected." The questioning continued, but shortly stopped again when Maze requested the IJ to "[i]nstruct him to go a little shorter." The IJ said, "[i]t's not the translator," to which Maze responded "I know." The IJ said, "You talk to your client. It's not the interpreter. You need to prep your client." The IJ then gave Maze permission to instruct the client either to give short responses or to break up his responses to allow the interpreter

3

time to interpret. At no other point in the proceedings was the accuracy of the translation questioned. Popovych gave almost all of his testimony on September 10, 2007.

In an oral opinion, the IJ denied all of Popovych's requested relief except voluntary departure. The IJ found that generally Popovych's testimony was credible and consistent with the information in his written application, but she found that "the underlying bases or merits of the respondent's claims" presented a problem. The IJ held that Popovych had failed to show any instance of past persecution, and that his attorneys had conceded the point. The IJ found no evidence of physical mistreatment or any significant deprivation of liberty, only claims of "veiled pressure or threats" that did not rise to the level of persecution contemplated in the INA. The IJ also held that Popovych failed to establish a well-founded fear of future persecution. She highlighted that Popovych's testimony about being reprimanded at work and therefore at risk was weakened by the awards and promotion he had received. She also compared the situation to that confronted by this court in *Marku v. Ashcroft*, 380 F.3d 982 (6th Cir. 2004), and concluded that there was no evidence that Popovych's treatment resulted from having a political opinion imputed to him or being a member of a social group, and so there was no nexus to a protected ground under the INA. The IJ found no evidence of past torture and found that Popovych's statements that he "could" be jailed, harmed, or tortured if returned to Ukraine did not satisfy his burden of proof under the CAT.

Popovych appealed the IJ's decision to the Board of Immigration Appeals (BIA). He argued that the IJ had erred on a number of legal and factual points, and that he was denied his due process rights because of an incompetent interpreter. The BIA panel dismissed Popovych's appeal. It determined that there was no clear error in the IJ's factual findings. The BIA agreed with the IJ that Popovych had not carried his burden of establishing a likelihood of future persecution under the

4

INA, primarily because there was no evidence that his treatment resulted from political opinions. The BIA also agreed with the IJ that Popovych had failed to show that it was more likely than not that he would be tortured if returned to Ukraine, because there was not sufficient evidence to support the assertion. Lastly, the BIA held that because Popovych failed to offer specific ways that his words could be translated differently, and because the instances of interpreter deficiencies he cited "d[id] not involve central aspects of his persecution claim," there was no proof that a better translation would have affected the outcome, and so he was not denied due process. Popovych timely petitioned this court for review.

II.

A. Fear of Persecution[1]

Substantial evidence does not compel a finding that Popovych will face persecution in Ukraine motivated by his membership in a particular social group or a political opinion imputed to him. He has not established a sufficient nexus to a protected ground. Such a nexus is required for a petitioner to be considered a refugee for purposes of asylum. *See* 8 U.S.C. § 1101(a)(42); *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). His lawyers conceded that he was not a victim of past persecution, and he does not appeal that issue. The future persecution that he claims he will suffer must therefore be different from what he encountered before leaving Ukraine. The main evidence he provides on this point — the visit of two unknown men to his house with vague threats, and the accusation of misconduct lodged against Popovych — does not establish a sufficient likelihood. The fear that criminals may seek retribution against a police officer who has performed

---

[1]The BIA erroneously stated that the REAL ID Act did not apply to Popovych's case because it misstated the date on which Popovych's application was filed. Because we would deny review under law existing both before and after the REAL ID Act, this error is harmless.

his duty does not constitute persecution based on a political opinion. *See Tamara-Gomez v. Gonzales*, 447 F.3d 343, 349-50 (5th Cir. 2006). Suggesting that there will be future persecution by the government is too speculative.

It was reasonable for the BIA to conclude that Popovych's police work seeking out corruption was not an expression of political opinion that formed the basis of persecution. There is not enough evidence to establish that Popovych's political opinions led to specific actions or that any such actions were perceived as political by his supervisors. Popovych makes much of the factual differences between his case and *Marku*, 380 F.3d 982, which the BIA and IJ relied on in reaching their decisions, but the case's reasoning remains applicable. Marku was employed by a government-owned company in Albania and was threatened by her supervisor when she refused to doctor the books to disguise losses. The IJ in her case found that there was insufficient evidence to establish that her persecutor had "imputed any political claim whatsoever to [her]." *Id*. at 985. Rather, the persecutor had acted "as a result of his fear that [Marku] would expose his criminal and corrupt activities." *Id*. We determined that though Marku's testimony suggested that she opposed government corruption "as an ideological matter," she had presented "no evidence that any of her actions were ideologically motivated or that Sota, her alleged persecutor, perceived them as such." *Id*. at 986-87. To support this statement, we pointed to the fact that Marku never publicly opposed corruption or attempted to expose her supervisor's actions. *Id*. at 987. Furthermore, the evidence did not compel the conclusion that her supervisor was acting in response to a purported political opinion, rather than "out of fear of losing his job." *Id*. at 988. Marku had not adequately demonstrated persecution on account of a political opinion.

6

The facts of Popovych's case lead to a similar conclusion. Popovych's profession was to investigate corruption, and he never took any steps beyond that charge. He never tried to complain to those higher up that his supervisors were pressuring him to decide cases on political grounds. He never attempted to expose corruption to the public or another government body. He never tried to broaden his investigative scope by taking on more cases than were assigned to him or working on cases that had been taken away from him. Nothing about his application or testimony suggests that his actions rose to the level of a whistle-blower or were interpreted as such by his supervisors. The pressure he testifies about from his supervisors appears to be based on his not doing what they were telling him to and thus getting in the way of their taking bribes, not his general opposition to the government. Popovych's situation more closely resembles a personal dispute with a particular government official, which even if rising to the level of persecution does not satisfy the INA's nexus requirement. *See Zoarab*, 524 F.3d at 781.

This is not a situation like *Bu v. Gonzales*, 490 F.3d 424, 426-27 (6th Cir. 2007), where we found that a union chairman who had staged a strike "protesting the factory officials' corrupt acts" and was arrested for "organiz[ing] illegal meeting[s and] gather[ing] workers to disturb the public security" and then beaten had shown that a political opinion was imputed to him. Popovych has made no argument that he was targeted "as a political prisoner who was guilty of opposition to the government," as in *Bu. Id.* at 429. Nor does the evidence he has submitted compel the conclusion that he will be arrested in the future.

*Marku* expressly addresses Popovych's argument that he will be persecuted because of his membership in a particular social group, namely "those working for the government who refuse to comply with its corruption." Marku pointed to a similar group, but presented no evidence

7

compelling the conclusion that membership in such a group made her "particularly likely to be persecuted in Albania." *Marku*, 380 F.3d at 987 n.8. Popovych's evidence fails on similar grounds.

Because Popovych has failed to show that the record compels reversal of the BIA's asylum denial, he has similarly failed to show that the record compels reversal of his denial of relief under withholding of removal, since that ground has an even higher burden of proof than asylum. *See Koliada v. I.N.S.*, 259 F.3d 482, 488-89 (6th Cir. 2001).

Popovych's argument that a remand is necessary because the BIA did not apply the proper standard when weighing the evidence used to establish a well-founded fear of persecution is without merit. The BIA cited the proper standard of review in its opinion explicitly, namely de novo review of legal standards, and stated that it agreed with the IJ's legal conclusions, including burden of proof. The BIA opinion goes on to discuss the record and evidence from it. The BIA *did* exercise its authority, recognized in *Matter of H-L-H & Z-Y-Z-*, 25 I. & N. Dec. 209, 212 (BIA 2010), to "give different weight to the evidence from that given by the Immigration Judge." Even if it did not, this weighing appears to be an option the BIA can choose to decline, and so no remand is necessary to determine whether it did so in this case.


B. Convention Against Torture

A reasonable adjudicator would not be compelled to find that Popovych had established that he would more likely than not be tortured if removed to Ukraine. *See* 8 U.S.C. § 1252(b)(4)(B); *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (stating standard). There is scant mention of torture on the record. Although some of the reports and articles Popovych submitted with his application mention torture of those detained by Ukranian police, these do not indicate a clear probability that

8

Popovych would suffer the same fate. As stated before, Popovych has not even proven that he is likely to be arrested if returned to Ukraine. Even if he were detained, his application does not suggest that torture is more likely than not to occur in prison. The reports he provided with his application chronicle complaints and confirmed cases of torture, but do not establish that the average individual detained in Ukraine will be tortured. Such sparse and generalized information fails to satisfy the Convention's burden of proof. *See* 8 C.F.R. § 208.16(c).

Popovych's argument that the threats made against him rose to the mark of emotional torture under 8 C.F.R. § 208.18(a)(4) is also unconvincing. CAT relief is prospective; Popovych must show the likelihood of being tortured if returned to Ukraine. 8 C.F.R. § 1208.16(c)(2). This torture must be distinct from the experience he had while in Ukraine, since Popovych's lawyer has already conceded that he did not suffer from persecution when in Ukraine, and torture is more extreme than persecution. Popovych's largely undeveloped argument on this point seems to be that those past threats *do* constitute torture. Yet never during his testimony did he claim that emotional anguish resulted from such threats. He did not claim these threats were so prolonged or sustained so as to cause him "mental pain or suffering." 8 C.F.R. § 208.18(a)(4). The degree of emotional anguish contemplated by the CAT requires more than isolated instances of threats, even serious ones. A reasonable IJ could find that the record does not suggest that any of these threats rose to the level of "prolonged mental harm caused by or resulting from . . . threat of imminent death." 8 C.F.R. § 208.18(a)(4).

C. Translation Problems

Popovych has failed to show that any errors in translation took place. Although he points out several instances in the record where the answers given do not respond to the questions asked, he offers no proof that the translation was the issue rather than his own answers. In the past, we have declined to find translation errors where the petitioner "fails to explain 'how these passages should have been interpreted.'" *Makhalou v. Gonzales*, 173 F. App'x 378, 380 (6th Cir. 2006) (quoting *Filipi v. Gonzales*, 127 F. App'x 848, 851 (6th Cir. 2005)). This court should not be asked to assume that mistranslations have occurred without some proof in the record beyond discrepancies and ambiguities. In *Koods v. Gonzales*, 129 F. App'x 263, 265 (6th Cir. 2005), we rejected a similar request.

Popovych has also failed to prove that the interpreter was incompetent. He was certified to translate in Popovych's native language, and there is no evidence to suggest that there were different dialects at play. In *Fall v. Gonzales*, 218 F. App'x 385, 389 (6th Cir. 2007), we found no violation of due process in part because "[a]t no point does the record indicate that the interpreter was incapable of interpreting the language petitioner spoke or that he spoke a different dialect." Popovych's case can be distinguished from *Amadou v. I.N.S.*, where the translator spoke a different dialect and commented several times during the hearing that he did not understand what Amadou was saying. *Amadou v. I.N.S.*, 226 F.3d 724, 725 (6th Cir. 2000).

The IJ acted reasonably when confronted with the translation difficulties to ensure Popovych's due process concerns were addressed. When Popovych's lawyer expressed concerns

10

about the quality of the translation, the IJ asked him specifically what was being lost.[2] When she determined that nothing of significant import had been lost, she had the interpreter instruct Popovych "to speak in shorter sentences and to watch you and you tell him to stop so you can make sure you're interpreting the exact sentences." The record suggests that the interpreter tried to do so, but that Popovych did not listen to the instruction, requiring the IJ to stop him again. The IJ concluded that the translator was not at fault for the length of Popovych's answers and so saw no need to stop the proceeding or find a replacement. These actions are similar to those taken by the IJ in *Malaj v. Gonzales*, 199 F. App'x 453, 460 (6th Cir. 2006), where the IJ had the interpreter repeat questions that elicited unclear answers and warned the interpreter to translate word for word. In *Iancu v. I.N.S*, 69 F. App'x 661, 662 (6th Cir. 2003), counsel objected only once that "something was lost in translation" but did not make further objections after that. The court determined that because "counsel had ample opportunity to clarify any matters that he thought were unclear, during direct and redirect examination," there had been no denial of due process. *Id*. Although Popovych points to several cases where the IJ treated the objection differently, including sending a recording of the hearing to a translation-evaluation service, none of these cases suggests that such actions are required to ensure due process. *See Peci v. Holder*, 379 F. App'x 499 (6th Cir. 2010); *Ba v. Holder*, 374 F. App'x 594 (6th Cir. 2010). Immigration judges have broad discretion in conducting their hearings. *See Ahmed v. Gonzales*, 398 F.3d 722, 725 (2005). The IJ took action to ensure that Popovych was

---

[2]At oral argument, counsel for Popovych stated that the Ukrainian speaker was actually Latvian, which explained why he was unable to specify translation errors. This fact would not have prevented Popovych from reviewing the transcript after the hearing and submitting a showing of specific errors.

afforded a full and fair hearing. Under the standard articulated in *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 553 (6th Cir. 2003), no due process violation occurred.

Even had Popovych shown errors in translation, he has failed to show that he was prejudiced by any alleged translation errors. Proof of prejudice is necessary to establish a due process violation in an immigration hearing. *See Warner v. Ashcroft*, 381 F.3d 524, 539 (6th Cir. 2004). The IJ found Popovych to be credible, and denied his application for an independent reason, namely, his failure to demonstrate a well-founded fear of future persecution based on a protected ground. There is little potential that a translation error affected her finding. This case is similar to *Daneshvar v. Ashcroft*, 355 F.3d 615, 622 (6th Cir. 2010), in which we stated that inadequate translation was irrelevant because the BIA rejected an application for failure to demonstrate a well-founded fear of persecution. Because the case did not hinge on an adverse-credibility determination, any inadequate translation was not prejudicial. *See also Kalaj v. Gonzales*, 185 F. App'x 468, 475 (6th Cir. 2006); *Cela v. Gonzales*, 205 F. App'x 376, 387 (6th Cir. 2006).

This case is again distinguishable from *Amadou*, 226 F.3d at 725-26, where the IJ denied Amadou's application on adverse-credibility grounds because of inconsistencies in Amadou's testimony and his limited knowledge on crucial points. We held that "the interpreter's faulty translation directly prejudiced Amadou because the judge and Board denied his application based on the testimony at the hearing. . . . [T]he interpreter's faulty translation likely played a significant part in the judge's credibility determination" and the Board's decision to deny Amadou's applications, and therefore constituted a violation of due process rights. *Id*. at 727. In situations like *Amadou*, the potential for translation to prejudice the applicant is great, because inconsistencies and vagueness will work against the applicant. We recently stayed an appeal to provide a petitioner with

the opportunity to present evidence to the BIA that her medical records were mistranslated, because an inconsistency in the records "contributed substantially and directly to the Immigration Judge's adverse-credibility determination." *See Sea v. Holder*, 444 F. App'x 843, 844 (6th Cir. 2011). In Popovych's case, with no adverse-credibility finding, he has failed to show such prejudice.

III.

We deny Popovych's petition for review.