NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0314n.06

**Case No. 20-4263**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 06, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANGELINA DOMINGO-MATEO; MATEO EDUARDO PEDRO-DOMINGO, | ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES |
| v. | ) ) ) | BOARD OF IMMIGRATION APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) ) | |
| Respondent. | ) | O P I N I O N |

BEFORE:     COLE, ROGERS, and MURPHY, Circuit Judges.

COLE, Circuit Judge.   Angelina Domingo-Mateo and her six-year-old son applied for asylum and withholding of removal.   After hearing testimony from Domingo-Mateo, the Immigration Judge ("IJ") denied their applications, concluding that they did not demonstrate past persecution.   The Board of Immigration Appeals ("BIA") affirmed.   Domingo-Mateo and her son subsequently brought this petition, arguing that they were denied a full and fair hearing in violation of the Due Process Clause because Domingo-Mateo's interpreter was inadequate and the IJ exhibited bias and hostility.   We disagree and accordingly deny the petition for review.

I.

Domingo-Mateo and her six-year-old son are natives of Guatemala.   The Department of Homeland Security filed a Notice to Appear against Domingo-Mateo in May of 2015, alleging that she was present in the United States without being lawfully admitted.   In response, the petitioners

applied for asylum and withholding of removal. Domingo-Mateo asserted that in 2013, her neighbor was killed by masked gang members after refusing to pay them money. She further explained that the same gang members had knocked on her door on four occasions, presumably to extort money from her as well. Domingo-Mateo asserted that her cousin Mathias Lopez had been sending her money, and that, but for her relations with her cousin, she would not have been targeted for extortion. As a result, she claimed that she feared the gang members would torture or kill her and her son if she returned to Guatemala.

At her first appearance before an IJ, Domingo-Mateo stated that her best language is Akateko. The IJ then held a total of three Master Hearings on October 2, 2015, February 1, 2016, and May 18, 2016. One was conducted with a Kanjobal interpreter and the other two with Spanish interpreters. After a stay, Domingo-Mateo's Individual Hearing was held on September 28, 2018, before a new IJ. This hearing was held with a Kanjobal interpreter. The IJ instructed the interpreter to make sure he and Domingo-Mateo understood each other. The interpreter responded, "Yes, Your Honor, we understand each other."

During the hearing, the IJ continuously had to ask Domingo-Mateo to answer the questions more directly. At one point, she stated, "Ma'am, yes or no. You have to listen to the question and answer it yes or no." Later, she inquired "Ma'am, you're not answering the question. You're just saying whatever it is you think you need to say. Your lawyer is going to ask the question again, and you will please answer it directly. Do you understand my instructions?" During this part of the testimony, the IJ also separately told Domingo-Mateo, "Comply with my request, please," and "Ma'am, just answer the question that was asked. Don't add anything."

In response to these inquiries, the petitioners' counsel asked the IJ if she could "inquire whether [Domingo-Mateo] is understanding the interpreter." The IJ reminded counsel that she

had confirmed they understood each other when the hearing started, to which counsel responded, "I understand." The IJ then further told counsel that just "because you're not getting the answers you want doesn't mean that you're going to challenge this interpreter in this language." Counsel then asked Domingo-Mateo, "[a]re you understanding the questions that I'm asking?" She responded with a yes.

At the end of the hearing, the IJ denied the application, concluding that the petitioners did not demonstrate past persecution. The IJ reasoned that "there is no evidence that the one time two masked men knocked on [Domingo-Mateo's] door had anything to do with the fact that Mathias Lopez was [her] cousin or that the men knocked on [her] door because he was sending [her] money." The IJ further noted that the masked men "did not threaten [her] or [her] son ever," she has six family members living safely in Guatemala, and there is no evidence that she reported the masked men's behavior to the police. The BIA affirmed the decision, concluding that the petitioners received a full and fair hearing in front of the IJ. Domingo-Mateo and her son then brought this petition for review.

## II.

Under the Fifth Amendment, Domingo-Mateo and her son have a "due process right to a full and fair hearing" as a part of their immigration proceedings. *Amadou v. I.N.S.*, 226 F.3d 724, 726 (6th Cir. 2000). That right may be violated if the IJ "cannot be said to have fairly considered the evidence presented by the petitioners." *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). Here, the petitioners allege that they were denied a full and fair hearing in violation of the Due Process Clause in two ways. First, they argue that the interpreter, who did not speak Domingo-Mateo's native dialect, was incompetent. Second, they argue that the IJ exhibited bias and hostility towards Domingo-Mateo. "[W]e review decisions by immigration judges on matters of removal

for Fifth Amendment due process violations *de novo*." *Id.* (citation omitted). With that, we address each argument in turn.

A. INCOMPETENT INTERPRETER

If asylum seekers do not understand English, we have held that their due-process right to a full and fair hearing includes a competent interpreter. *Amadou*, 226 F.3d at 726; *Alhousseini v. Sessions*, 751 F. App'x 674, 677 (6th Cir. 2018). To demonstrate that the interpreter was incompetent, the petitioners must show both inadequacy in the translation and that this inadequacy resulted in prejudice. *See Popovych v. Holder*, 470 F. App'x 446, 452–53 (6th Cir. 2012).

On appeal, the petitioners argue that the interpreter was incompetent by pointing to five alleged problems at the Individual Hearing: (1) The court scheduled a Kanjobal interpreter when Domingo-Mateo's native dialect is Akateko; (2) the IJ did not properly identify and confirm Domingo-Mateo's language and dialect at the hearing; (3) the IJ did not confirm directly that Domingo-Mateo understood the interpreter; (4) Domingo-Mateo's counsel became concerned that her client was not understanding the interpreter yet was discouraged from inquiring; and (5) the record does not demonstrate that the IJ administered the Interpreter's Oath to Domingo-Mateo's interpreter. Yet the petitioners do not argue that these alleged errors resulted in prejudice.

We need not analyze whether the petitioners establish translation errors because they have not met their burden to show prejudice. To demonstrate prejudice, the petitioners must establish that the IJ's conclusion "relate[d] to the translation errors." *Gishta v. Ashcroft*, 121 F. App'x 585, 591 (6th Cir. 2005). Here, the IJ denied the petitioners' application because she concluded that they did not demonstrate past persecution. Specifically, the IJ explained that there was no evidence of a connection between the gang members knocking on Domingo-Mateo's door and her cousin sending her money; the gang members never directly threatened her or her son; she has six family

members currently living safely in Guatemala; and she never reported the gang behavior to law enforcement. Nowhere do the petitioners allege that any of these conclusions were wrong or misrepresented Domingo-Mateo's intended testimony. Therefore, "there is little potential that a translation error affected [the IJ's] finding." *Popovych*, 470 F. App'x at 453; *see also Gishta*, 121 F. App'x at 591–92; *Thapa v. Holder*, 572 F. App'x 314, 319 (6th Cir. 2014); *Kruze v. Lynch*, 615 F. App'x 857, 866 (6th Cir. 2015). Because the petitioners have not demonstrated prejudice, they cannot establish a due-process violation.

## B. BIAS AND HOSTILITY

The Due Process Clause also entitles asylum seekers "to an unbiased arbiter who has not prejudged their claims." *Ahmed*, 398 F.3d at 725. But during immigration proceedings, an IJ has "quasi-judicial powers to control the pace of the hearings, and to focus the hearings on relevant matters." *Ivezaj v. I.N.S.*, 84 F.3d 215, 220 (6th Cir. 1996), *superseded on other grounds by* 8 U.S.C. § 1252. And we have held that during such hearings, the IJ does not violate the Constitution by acting in ways that could be characterized as "no nonsense." *Id.* Indeed, "'expressions of impatience, dissatisfaction, annoyance, or even anger' do not amount to bias" under the Due Process Clause. *Preducaj v. Holder*, 379 F. App'x 508, 510 (6th Cir. 2010) (quoting *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)). To establish a due-process violation resulting from bias and hostility, the petitioners must demonstrate "both error and substantial prejudice." *Id.* (quoting *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007)).

The petitioners argue that the IJ limited Domingo-Mateo's testimony, instructed her to only provide yes or no answers in some instances, and reprimanded her when she tried to explain her answers in more depth. But these statements cited by the petitioners demonstrate the IJ's seeking clarity on Domingo-Mateo's testimony, requesting that she answer the question asked and cabin

her answers to be more responsive to those questions. And although "the language the IJ employed could have been more artful," there is no indication or allegation that the IJ acted "as a partisan adjudicator seeking to intimidate [Domingo-Mateo] and [her] counsel." *Hassan v. Gonzales*, 403 F.3d 429, 436–37 (6th Cir. 2005) (quoting *Reyes-Melendez v. I.N.S.*, 342 F.3d 1001, 1007 (9th Cir. 2003)). Without more, the petitioners cannot demonstrate that they were deprived of due process. *See id.*

III.

We deny the petition for review.