**Miguel Angel AGUILAR–AGUILAR,**
**Petitioner,**

v.

**Loretta E. LYNCH, Attorney**
**General, Respondent.**

No. 14–4118.

United States Court of Appeals,
Sixth Circuit.

Sept. 22, 2015.

Before: GUY, MOORE, and
KETHLEDGE, Circuit Judges.

### OPINION

KAREN NELSON MOORE, Circuit
Judge.

Miguel Angel Aguilar–Aguilar seeks review of a decision by the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of an Immigration

Judge ("IJ") denying Aguilar–Aguilar's application for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c). For the reasons set forth below, we **DENY** the petition.

### I. BACKGROUND

Aguilar–Aguilar is a forty-nine-year-old native and citizen of Durango, Mexico. 11/29/12 Oral Decision and Orders of the Immigration Judge ("11/29/12 IJ Order") at 1 (A.R. 357). He illegally entered the United States in March 1997, and at the time of these proceedings lived in Pontiac, Michigan. Notice of Entry of Appearance as Attorney (A.R. 24); 11/29/12 Hr'g Tr. at 11, 25 (A.R. 403, 417).

On January 31, 2011, the Department of Homeland Security ("DHS") filed a Notice to Appear, charging Aguilar–Aguilar as a removable alien pursuant to the INA, 8 U.S.C. § 1182(a)(6)(A)(i), and ordering him to appear for a removal hearing. Notice to Appear (A.R. 609). At a hearing on August 30, 2011, Aguilar–Aguilar admitted the factual allegations in the Notice to Appear and conceded the DHS's charge of removability. 8/30/11 Hr'g Tr. at 7 (A.R. 398); Notice to Appear (A.R. 609).

On November 28, 2011, Aguilar–Aguilar filed an I–589 Application for Withholding of Removal ("Application").[1] I–589 Application at 1, 9 (A.R. 559, 567). He sought withholding of removal on two grounds: (1) the INA, on the basis of his nationality and membership in a particular social group (which Aguilar–Aguilar defined as "persons who are returning to Mexico after a long stay in the United States"), and (2) the CAT. *Id.* at 5 (A.R. 563).

---

1. Because Aguilar–Aguilar "did not file [an asylum] application within one year of his last arrival in the United States" and did "no[t]

have a sufficient reason or excuse for missing the one-year deadline," he was ineligible for asylum. 11/29/12 IJ Order at 2 (A.R. 358).

On November 29, 2012, Aguilar–Aguilar and his counsel appeared at a removal hearing before an IJ in Detroit, Michigan. 11/29/12 Hr'g Tr. at 1 (A.R. 401). Consistent with Aguilar–Aguilar's Application, Aguilar–Aguilar's counsel identified his client's social group as "persons who are returning to Mexico after a long stay in the United States." *Id.* at 13–14 (A.R. 405–06). Aguilar–Aguilar testified that the drug cartel Los Zetas and Mexican criminal "El Chapo" were engaged in an ongoing battle for territory in his native Durango. *Id.* at 30 (A.R. 422). He observed that friends and family members living in Durango had been kidnapped or killed by cartel members. *Id.* at 28–29 (A.R. 420–21). Aguilar–Aguilar feared that, should he be deported to Mexico, members of Los Zetas would kidnap him or his children under the belief that they had money to pay ransom. *Id.* at 30, 35 (A.R. 422, 427). He said that he was not afraid of the police or members of the Mexican government harming him, but added that they would be of little help in protecting him given their fear of the cartels. *Id.* at 35–36 (A.R. 427–28).

On cross-examination, Aguilar–Aguilar conceded that he had no "proof of a case where someone was targeted specifically because they were returning from the United States and perceived to be American." *Id.* at 44 (A.R. 436). And Aguilar–Aguilar agreed that according to a recent State Department Travel Warning that *he* had submitted as an exhibit, "there is no evidence that Transnational Criminal Organizations (TCOs) have targeted U.S. visitors and residents based on their nationality." *Id.* at 45 (A.R. 437); 11/20/12 Dep't of State Travel Warning at 1 (A.R. 511). That same Travel Warning added "that the Mexican government has been engaged in an extensive effort to counter TCOs which engage in narcotics trafficking and other unlawful activities throughout

Mexico." 11/20/12 Dep't of State Travel Warning at 1 (A.R. 511).

The IJ denied Aguilar–Aguilar's Application in an oral decision. 11/29/12 IJ Order at 14 (A.R. 370). He stated that although Aguilar–Aguilar had testified to incidents of violence in Durango, he had not corroborated them with record evidence or established that any of them were triggered by their victims' "membership in a particular social group." *Id.* at 11 (A.R. 367). And he concluded that Aguilar–Aguilar had failed to prove that the Mexican government would torture him upon his return to Mexico. *Id.* at 14 (A.R. 370). Accordingly, the IJ denied Aguilar–Aguilar's Application and, pursuant to Aguilar–Aguilar's request, granted him voluntary departure from the United States "on or before January 28, 2013." *Id.*

Aguilar–Aguilar appealed to the BIA on March 15, 2013. Resp't BIA Brief at 41 (A.R. 66). His brief made two main arguments: (1) that the IJ made several factual errors, which together necessitated a remand; and (2) that the IJ violated the REAL ID Act by not giving Aguilar–Aguilar an opportunity to corroborate his claims with supporting documentation. *Id.* at 8–9 (A.R. 33–34). In response, the DHS moved for summary affirmance. DHS Mot. For Affirmance (A.R. 15).

The BIA issued a written opinion dismissing Aguilar–Aguilar's appeal on October 24, 2014. 10/24/14 BIA Op. at 1 (A.R. 2). The BIA affirmed the IJ's denial of Aguilar–Aguilar's Application under both the INA and the CAT. *Id.* at 1–2 (A.R. 2–3). With respect to Aguilar–Aguilar's "particular social group" claim, the BIA wrote that Aguilar–Aguilar had failed to "show[ ] that there is any intrinsic characteristic of the individuals in [his] group that would motivate persecution." *Id.* at 2 (A.R. 3). "[M]embers of" Aguilar–Agui-

lar's claimed social group, it held, "would not be meaningfully distinguishable from any other individuals of means in the general populace of Mexico who might be victimized by criminals." *Id.* And in affirming the IJ's denial of CAT relief, the BIA wrote that Aguilar–Aguilar "d[id] not appear to contest [the IJ's] conclusion that the Mexican government is attempting to protect its citizenry from general conditions of violence." *Id.* In turn, the BIA concluded that Aguilar–Aguilar had failed to demonstrate "that it is more likely than not that he would be subjected to torture that would be inflicted by or with the acquiescence ... of a public official or other individuals acting in an official capacity." *Id.*

## II. ANALYSIS

Aguilar–Aguilar challenges the BIA's decision on two grounds. First, he argues that the BIA and the IJ erred by denying him withholding from removal under the CAT. Second, he argues that two 2014 BIA decisions interpreting the term "particular social group" require us to remand his case.

We have "jurisdiction, under 8 U.S.C. § 1252, to review the BIA's final determination regarding an order of removal." *Harmon v. Holder,* 758 F.3d 728, 732 (6th Cir.2014). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder,* 557 F.3d 429, 435 (6th Cir.2009). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* We review questions of law *"de novo,* but we give substantial deference to the BIA's interpretations of the INA and its accompanying regulations." *Kukalo v.*

*Holder,* 744 F.3d 395, 399 (6th Cir.2011). We review "[f]actual findings ... under a substantial evidence standard 'in which we uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Zhao v. Holder,* 569 F.3d 238, 247 (6th Cir.2009) (quoting *Koulibaly v. Mukasey,* 541 F.3d 613, 619 (6th Cir.2008)). Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Umaña–Ramos v. Holder,* 724 F.3d 667, 670 (6th Cir.2013) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Applying these standards, we must deny Aguilar–Aguilar's petition for review.

### A. Relief Under the CAT

Aguilar–Aguilar makes two arguments regarding the CAT. First, he faults the BIA for engaging in what he deems "impermissible fact-finding" instead of remanding his case to an IJ. Second, he claims that he adequately demonstrated that he would be tortured in Mexico. Neither of these arguments has merit.

#### 1. The BIA's Allegedly Impermissible Fact–Finding

 "In order to establish entitlement to ... relief" under the CAT, "an alien must prove 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Singh v. Ashcroft,* 398 F.3d 396, 404 (6th Cir.2005) (quoting *Pilica v. Ashcroft,* 388 F.3d 941, 951 (6th Cir.2004)). As relevant here, "[t]orture is defined as any act by which severe pain or suffering ... is intentionally inflicted on a person ... when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other

person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

Aguilar–Aguilar alleges that the IJ applied a different—and incorrect—definition of "torture" in denying his claim for CAT relief. The IJ concluded that Aguilar–Aguilar failed to demonstrate that any harm he might suffer in Mexico "would [have] the required nexus with the government of Mexico or any other government in Mexico." 11/29/12 IJ Order at 14 (A.R. 387). But the CAT, Aguilar–Aguilar notes, does not by its terms require an alien to prove that he will be tortured by a foreign *government.* Rather, an alien must prove that it is more likely than not that a *"public official"* will torture him. 8 C.F.R. § 208.18(a)(1).

■ Aguilar–Aguilar does not articulate a qualitative difference between these two "standards"; he simply argues that "[p]ublic official is a narrower standard than 'government.'" Pet'r Br. at 14. And he concedes that the BIA applied the correct, "public official" standard. But by Aguilar–Aguilar's logic, this triggered yet another error. The BIA, he concludes, could not have relied on the IJ's fact-finding, because the IJ never determined whether a Mexican *public official* would torture Aguilar–Aguilar. The BIA, he reasons, must have conducted its own fact-finding. And because the BIA may "not engage in de novo review of findings of fact determined by an immigration judge," 8 C.F.R. § 1003.1(d)(3)(i), he asserts that the BIA's fact-finding in his case was "impermissible."

We disagree. The IJ applied the correct definition of "torture" under the CAT when he denied Aguilar–Aguilar's claim for relief. As Aguilar–Aguilar admits, the IJ identified (and cited) both the CAT's standard for relief and its definition of torture in his oral opinion. 11/29/12 IJ Order at 7–8 (A.R. 380–81). The IJ's con-

clusion that Aguilar–Aguilar could not demonstrate a "nexus with the government of Mexico" tracks the relevant regulatory definition of torture, which requires "acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). That the IJ used the word "government" and not the words "public official" does not render his analysis incorrect. And by failing to cite any authority suggesting that these terms *are* different, Aguilar–Aguilar does nothing to convince us otherwise. In turn, we conclude that the BIA did not engage in an impermissible de novo review of the IJ's findings of fact.

## 2. Entitlement to CAT Relief

■ Aguilar–Aguilar next argues that he is entitled to relief under the CAT and that the IJ and the BIA erred by concluding otherwise. Again, we disagree.

Aguilar–Aguilar did not raise this claim in his brief to the BIA. Apart from one conclusory sentence ("The IJ erred as a matter of law in denying withholding of removal and CAT relief.") he did not address his entitlement to CAT relief at all. Resp't BIA Brief at 3 (A.R. 28). We have jurisdiction to review "a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Thus, "in an appeal from an order of removal, we have jurisdiction to review only those claims as to which the alien has exhausted his administrative remedies, that is, those claims 'properly presented to the BIA and considered on their merits.'" *Hasan v. Ashcroft,* 397 F.3d 417, 419 (6th Cir.2005) (quoting *Ramani v. Ashcroft,* 378 F.3d 554, 560 (6th Cir.2004)). We strictly adhere to this jurisdictional bar: "even if an issue is raised by the alien in his notice of appeal to the BIA, we will consider it

waived if it is not argued in the brief filed with the BIA." *Hasan*, 397 F.3d at 420.

We recognize an exception to this rule and "find[ ] appellate jurisdiction to review issues raised sua sponte by the BIA." *Khalili*, 557 F.3d at 435. Here, the BIA considered and rejected Aguilar–Aguilar's claim for relief under the CAT. "In such cases, the BIA's action waives that issue's exhaustion requirements." *Id.* Accordingly, we have jurisdiction to consider Aguilar–Aguilar's claim for CAT relief.

We conclude that substantial evidence supports the BIA's determination that Aguilar–Aguilar is not entitled to CAT relief. The harm that Aguilar–Aguilar claims he will face in Mexico "does not constitute 'torture' under the Convention because it does not originate from pain or suffering either initiated by a public official or inflicted with the consent or acquiescence of such an official.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir.2009). Far from it: at his removal hearing, Aguilar–Aguilar testified that he *did not* fear harm at the hands of Mexican public officials. 11/29/12 Hr'g Tr. at 35–36 (A.R. 427–28). Aguilar–Aguilar now contends that "[t]he record is replete with evidence supporting CAT relief in that public officials engage in torture and are corrupt." Pet'r Br. at 22. But nothing in the record suggests that Aguilar–Aguilar *himself* is likely to be tortured in Mexico. That is because none of his submissions to the IJ, the BIA, or this Court demonstrates "that it is more likely than not" that anyone—let alone a Mexican public official—will torture him. *See Singh*, 398 F.3d at 404. Accordingly, his claim for CAT relief fails.

**B. Request for Remand**

■ Aguilar–Aguilar next argues that two companion BIA precedential opinions interpreting the INA's "particular social group" requirement—*Matter of W–G–R–*, 26 I. & N. Dec. 208 (BIA 2014), and *Matter of M–E–V–G–*, 26 I. & N. Dec. 227 (BIA 2014)—require us to remand his case to an IJ.

"A removable applicant may qualify for withholding of removal if he establishes that 'it is more likely than not' that removal would lead to persecution on account of his 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Dragnea v. Lynch*, No. 14–4137, —— Fed.Appx. ——, ——, 2015 WL 4939664, at *2 (6th Cir. Aug. 19, 2015) (quoting 8 C.F.R. § 1208.16(b)(2)). Consistent with BIA precedent, "we have defined a particular social group as a group composed of individuals who share a common, immutable characteristic." *Umaña–Ramos*, 724 F.3d at 671 (quoting *Urbina–Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir.2010)) (internal quotation marks omitted). And "following the BIA, we have held that '[a]n alleged social group must be both particular and socially visible.'" *Umaña–Ramos*, 724 F.3d at 671 (quoting *Bonilla–Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir.2010)).

*M–E–V–G–* and *W–G–R–* clarify these requirements. Both decisions "rename th[e social visibility] requirement 'social distinction' to clarify that social visibility does not mean 'ocular' visibility." *W–G–R–*, 26 I. & N. Dec. at 216; *accord M–E–V–G–*, 26 I. & N. Dec. at 234. Thus, "[t]o be socially distinct, a group need not be *seen* by society; it must instead be *perceived* as a group by society." *W–G–R–*, 26 I. & N. Dec. at 216. Aguilar–Aguilar focuses on a narrow aspect of this clarification: that "[s]ocial distinction may ... not be determined solely by the perception of an applicant's persecutors." *Id.* at 218; *accord M–E–V–G–*, 26 I. & N. Dec. at 242. A persecutor-centric approach, the BIA wrote, "is in conflict with [its] prior holding that 'a social group cannot be defined ex-

clusively by the fact that its members have been subjected to harm.' " *W–G–R–*, 26 I. & N. Dec. at 218 (quoting *Matter of A–M– E & J–G–U–*, 24 I & N Dec. 69, 74 (BIA 2007)).

*M–E–V–G–* and *W–G–R–* were decided on February 7, 2014, and the BIA relied on both in rejecting Aguilar–Aguilar's claim for withholding of removal under the INA. 10/24/14 BIA Op. at 2 (A.R. 3). But the BIA decided these two cases *after* Aguilar–Aguilar's November 29, 2012 removal hearing. And Aguilar–Aguilar claims that at that hearing, "he was aiming to show that his proposed social group was socially visible to persecutors." Pet'r Br. at 25. Thus, Aguilar–Aguilar contends, he never had an opportunity to present evidence targeted towards these opinions' "particular social group" standard before the BIA rendered its decision in his case. *Id.* at 25–26. Accordingly, he argues that he deserves a "due process opportunity" to "produce the correct types of evidence" on remand. *Id.* at 25, 30.[2]

We disagree. Aguilar–Aguilar erroneously asserts that he "never had notice and an opportunity to collect evidence meeting the parameters" of *M–E–V–G–* and *W–G– R–*. *Id.* at 3. He did. That is because we have *long* "held that a social group may not be circularly defined by the fact that it suffers persecution."[3] *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir.2011); *see, e.g., Lugovyj v. Holder*, 353 Fed.Appx. 8, 10 (6th Cir.2009); *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir.2005). When Aguilar–Aguilar received his Notice to Appear in 2011, it was well-settled in this circuit that an alien seeking withholding from removal on the basis of membership in a particular social group must demonstrate that "[t]he individuals in the group ... share a narrowing characteristic other than their risk of being persecuted." *Rreshpja*, 420 F.3d at 556. Aguilar–Aguilar did the opposite. He identified his particular social group as "persons who are returning to Mexico after a long stay in the United States." He expressed his concern that Mexican criminals would target him

---

**2.** In his Reply Brief, Aguilar–Aguilar cites twelve Ninth Circuit decisions remanding cases in light of *W–G–R–* and *M–E–V–G–*. Pet'r Reply Br. at 7–11. They are inapposite. In all twelve of these cases—and unlike in Aguilar–Aguilar's case—the BIA had issued a decision *before* either *W–G–R–* or *M–E–V–G–* was decided. *See Aguilar–Rodriguez v. Holder*, 577 Fed.Appx. 648, 649 (9th Cir.2014); *Amaya–Palacios v. Holder*, 575 Fed.Appx. 807, 808 (9th Cir.2014); *Barragan–Zepeda v. Holder*, 568 Fed.Appx. 522, 523 (9th Cir.2014); *de Franco v. Holder*, 575 Fed.Appx. 730, 731 (9th Cir.2014); *Gonzalez–Flores v. Holder*, 575 Fed.Appx. 732, 733 (9th Cir.2014); *Hernandez–Garcia v. Holder*, 576 Fed.Appx. 705, 706 (9th Cir.2014); *Midence–Martinez v. Holder*, 575 Fed.Appx. 788, 788–89 (9th Cir.2014); *Molina–Linares v. Holder*, 575 Fed.Appx. 729, 730 (9th Cir.2014); *Montanico v. Holder*, 563 Fed.Appx. 541, 542 (9th Cir.2014); *Palencia v. Holder*, 575 Fed.Appx. 731, 732 (9th Cir. 2014); *Pirir–Boc v. Holder*, 750 F.3d 1077, 1079 (9th Cir.2014); *Quele–Navarro v..Holder*,

560 Fed.Appx. 662, 663 (9th Cir.2014). None of these cases supports Aguilar–Aguilar's claim that he has a due-process right to a remand.

**3.** Aguilar–Aguilar addresses a recent BIA decision remanding a "particular social group" case, *Matter of A–R–C–G–*, 26 I. & N. Dec. 388 (BIA 2014), in his Principal Brief and Reply Brief. Pet'r Br. at 28–29; Pet'r Reply Br. at 11–14. *A–R–C–G–* cites both *W–G–R–* and *M– E–V–G–* with approval. *See A–R–C–G–*, 26 I. & N. Dec at 392–94. Aguilar–Aguilar argues that *A–R–C–G–* establishes that "[a]ny Circuit court decision decided prior to *M–E–V–G–* and *W–G–R–* finding that any proposed particular social group is not valid as a particular social group under the [INA] is no longer binding precedent because it was decided prior to ... *M–E–V–G–* and *W–G–R–*." Pet'r Reply Br. at 12. We do not read *A–R–C–G–* as standing for this proposition, and decline to remand Aguilar–Aguilar's case on this basis.

under the assumption that he had money. And he did nothing to distinguish himself "from any other individual[ ] of means in the general populace of Mexico who might be victimized by criminals." BIA Op. at 2 (A.R. 3). His argument would have failed under Sixth Circuit precedent predating—by nearly a *decade*—*W–G–R–* and *M–E–V–G–*. We are thus satisfied that Aguilar–Aguilar does not have a due-process right to re-argue his claim and we decline to remand his case.

## III. CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.