NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0195n.06

Case No. 16-3426

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ABDOU KARIM THIOUNE, | ) | **FILED**<br>Mar 30, 2017<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| JEFF B. SESSIONS, Attorney General, | ) | APPEALS |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |
|  | ) |  |

BEFORE: MERRITT, CLAY, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Abdou Karim Thioune petitions this Court to reverse the decision of the Board of Immigration Appeals and the immigration judge denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. The immigration judge determined that Thioune did not produce credible testimony, based in large part on inconsistencies in his statements. After reviewing the record, the Board of Immigration Appeals agreed with the immigration judge's analysis and conclusion. Thioune filed a timely appeal of this decision. For the following reasons, we now **AFFIRM** the decision of the Board of Immigration Appeals.

I.

A.

Abdou Thioune, a native citizen of Mauritania, was born in Rosso, Mauritania, a city on the country's southwest border with Senegal. Thioune and his family are of Afro-Mauritanian descent. Thioune described his father as a businessman who was also an active member of the African Liberation Forces of Mauritania ("FLAM"), a paramilitary organization for people of West African descent living in Mauritania. Tensions between FLAM and the government intensified in April 1989 when a border dispute with Senegal resulted in widespread ethnic violence and the forced migration of tens of thousands of black Mauritanians into Senegal. The armed struggle between FLAM, backed by the Senegalese government, and the Mauritanian government continued through April 1992, and even after peace was restored over 25,000 Black Mauritanian refugees remained in Senegal.

According to Thioune, when he was ten or eleven years old, he and his family were forced from their home by white policemen. The exact date of these events is subject to some confusion. On his initial asylum application, Thioune stated that his family was expelled in February 1990. A.R. 174-75. However, later he changed his testimony to reflect that his family was expelled between May and July 1989. *Id.* Based on Thioune's testimony, the details of this incident are unclear. Upon entering the home, the policemen allegedly beat Thioune's father severely before Thioune and his mother fled to hide. A.R. 162. Thioune testified that he did not actually witness the beating but that he overheard his mother and father speaking about it later. A.R. 178. Also, Thioune initially testified that while fleeing his home, he witnessed the policemen burning everything, which the IJ understood to include the home. A.R. 213. However, he later testified that he merely remembers the officers taking belongings from the

home. A.R. 177-78. When confronted on this point, Thioune explained that he was not sure what happened to the home but that he recalls seeing smoke as he and his mother fled. A.R. 193. Thioune and his mother were eventually found by government officers and sent to a refugee camp in Rosso, where he was allegedly beaten by government agents. A.R. 178. However, even the details of this incident are uncertain. When asked during his application hearing about the abuse he suffered, Thioune initially testified that he was beaten and kicked by officers during his stay at the camp. A.R. 164. However, later at the same hearing, Thioune testified that he had been burned as well. A.R. 178-79, 193-94. After a couple of weeks, Thioune and his mother were expelled by government officials and forced into exile in Senegal. A.R. 165. They were reunited with Thioune's father in a refugee camp in Senegal before a friend of the family secured their release and helped them relocate to Dakar. A.R. 165. Thioune testified that two months after relocating to Dakar, his father succumbed to the injuries he received the day his family was expelled from their home in Mauritania.[1] A.R. 166-67.

B.

Over a decade later in the fall of 2000, Thioune illegally entered the United States.[2] On August 20, 2001, Thioune filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") with the former Immigration and Naturalization Service. Thioune was first interviewed regarding his application on June 28, 2005, by the Department of Homeland Security, which resulted in the referral of the case to an Immigration Judge ("IJ") for de novo review in removal proceedings. Thioune conceded

---

[1] Thioune has consistently testified that his father passed away due to his injuries. However, there is a letter in the record from a family friend in Mauritania stating that conditions in the country "*still* prevent[] [Thioune's father] from returning back to Mauritania." A.R. 220.

[2] The exact date of his entry is unclear. Initially, on his application he stated that he entered the United States on a friend's passport in September 2000. However, he told the asylum officer in 2005 that he entered in January 2000. Finally, he testified before the immigration judge that he entered the United States on November 26, 2000.

removability but renewed his application for protection from removal. After a number of delays, Thioune testified in support of his application at a merits hearing on July 21, 2014. On November 20, 2014, the IJ denied the Thioune's application.

The IJ first noted that Thioune had not shown "by clear and convincing evidence that he applied for asylum within one year of entering the United States." A.R. 79. The IJ also concluded that Thioune provided incredible testimony due to his evasive answers, discrepancies between Thioune's written application and his oral testimony, and discrepancies between the timeline Thioune provided to the asylum officer in 2005 and the timeline he provided to the immigration officer. A.R. 77-79. The IJ then determined that the corroborating evidence provided by Thioune did not sufficiently rehabilitate Thioune's testimony or provide independent evidence that he was persecuted in Mauritania. A.R. 79. Based on this finding, the IJ decided that Thioune had not met the burden of proof required for asylum. A.R. 80. Further the IJ determined that because Thioune had not met the lower burden required for asylum, "it necessarily follows that he has failed to satisfy the more stringent . . . standard required for withholding of removal." A.R. 80. Finally, the IJ concluded that Thioune had not provided sufficient evidence to support relief under CAT. A.R. 80-81.

The Board of Immigration Appeals (the "BIA") affirmed the IJ's findings in an order dated March 30, 2016. A.R. 2-5. In upholding the IJ's judgment, the BIA accepted the IJ's conclusion that Thioune did not offer credible testimony, determining that it was not clearly erroneous. A.R. 2-3. The BIA also agreed with the IJ's finding that Thioune had not provided sufficient corroborative evidence to either rehabilitate or independently satisfy his claim of past persecution. A.R. 3-4. Finally, the BIA agreed with the IJ's conclusion that Thioune had not met the burden for establishing a well-founded fear of future persecution. A.R. 4.

II.

Thioune has timely petitioned for review of the BIA's order upholding the decision to deny Thioune's application for asylum, withholding of removal, and protection under CAT and to order Thioune's removal. 8 U.S.C. § 1252(a)(1) grants this Court jurisdiction over a "final order of removal" issued by the BIA.

III.

Where the BIA issues a separate order reviewing an IJ's decision de novo, we review the BIA's decision as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). However, "[w]here the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). "Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Further, we "review[] both the immigration judge's and the BIA's factual findings under the substantial-evidence standard," and must consider these findings "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

Thioune has requested asylum relief under 8 U.S.C. § 1158(b)(1) of the Immigration and Nationality Act ("INA"). The statute requires that the applicant bear the burden of establishing his status as a refugee, meaning that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The applicant may sustain his burden without corroboration, but only where the applicant satisfies the factfinder "that the applicant's testimony is credible." 8 U.S.C. § 1158(b)(1)(B)(ii). Thus, the "credibility determination forms the initial

consideration in an IJ's asylum claims analysis." *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). In assessing credibility, the factfinder may base his determination on "the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)." 8 U.S.C. § 1158(b)(1)(B)(iii). As this is a pre-REAL ID case, "an adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Mapouya*, 487 F.3d at 406-07 (citation omitted). Further, "speculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Id.* at 407. Where the factfinder determines that the applicant's testimony is not credible, the applicant must provide corroborating evidence, "unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).

After deciding whether the applicant is credible, the IJ must then determine whether the applicant has sufficiently shown that he has or will suffer persecution on account of at least one of the listed categories. *Mapouya*, 487 F.3d at 412. An applicant can satisfy that element by proving "that he or she has suffered past persecution [or] that he or she has a well-founded fear of future persecution." *Id.* A showing of past persecution establishes a rebuttable presumption of "a well-founded fear of future persecution." *Filipi v. Gonzales*, 127 F. App'x 848, 852 (6th Cir. 2005). "The government may rebut that presumption by showing that conditions in the petitioner's country have changed so 'that the applicant no longer has a well-founded fear of persecution.'" *Id.* (quoting 8 C.F.R. § 208.13(b)(1)(i)(A)). In order to satisfy the persecution element by showing a well-founded fear of future persecution, the fear "must be both subjectively genuine and objectively reasonable." *Mapouya*, 487 F.3d at 412 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998)). An applicant need not show "that there

is a reasonable possibility he or she would be singled out individually for persecution," but rather may show "that there is a pattern or practice . . . of persecution of a group of persons similarly situated" rendering "his fear of persecution upon return [to be] reasonable." 8 C.F.R. § 1208.13(b)(2)(iii).

Thioune appeals the BIA's decision on the grounds that both the IJ and the BIA found him not to be credible without considering his age when he was expelled from Mauritania.[3] His argument is without merit. The IJ and the BIA did consider Thioune's age at the time his family was expelled and concluded that his youth did not explain the inconsistencies in Thioune's testimony. The IJ and the BIA cited to a number of inconsistences, including the date of the incident in which Thioune and his family were expelled from their home and the manner in which the government officers destroyed his family's property. *See* A.R. 3, 77-78. The IJ also considered Thioune's inconsistent statements regarding the timing of his entry into the United States, which does not go to the heart of his claim. A.R. 77. However, the inconsistencies considered by the BIA do, and "where [the] IJ cites inconsistencies going to [the] heart of the claim, additional citation to immaterial inconsistencies or speculation does not undermine [a] credibility ruling." *Nabhani v. Holder*, 382 F. App'x 487, 490 (6th Cir. 2010) (citing *Vasha v. Gonzales*, 410 F.3d 863, 870-72 (6th Cir. 2005)).

While Thioune now tries to explain away these inconsistencies by pointing to his age at the time of his alleged persecution, this is not merely an instance of an applicant misremembering certain immaterial details. Thioune provided several different and yet specific

---

[3] Thioune also argued on appeal to this Court that the IJ violated his Fifth Amendment right to due process by aggressively interrogating Thioune during his interview to such a degree that the IJ could no longer be considered a neutral arbiter of the facts. However, because Thioune did not raise this claim before the BIA, we do not have jurisdiction to review it. *Aguilar-Aguilar v. Lynch*, 620 F. App'x 528, 532-33 (6th Cir. 2015) ("[I]n an appeal from an order of removal, we have jurisdiction to review only those claims as to which the alien has exhausted his administrative remedies, that is, those claims properly presented to the BIA and considered on their merits." (citing *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005))).

accounts of the events resulting in his family's expulsion from Mauritania. He gave differing accounts for how his family's property was disposed of, how he was injured during these events, and when these events took place. Youth may affect the way a person perceives or recalls a traumatic event, but it cannot explain why Thioune would give multiple different accounts of the same events. Nor has Thioune provided any Sixth Circuit case law to the contrary.[4] The number of inconsistencies and their centrality to Thioune's claim of persecution lead us to conclude that the BIA's adverse credibility finding was based in substantial evidence, as no "reasonable adjudicator would be compelled to conclude to the contrary." *See Khalili*, 557 F.3d at 435 (citation omitted).

IV.

Petitioner also challenges the BIA's decision to deny his application for withholding removal on the grounds that he has shown past persecution and is thus entitled to the presumption of withholding removal. The burden for a successful application for withholding removal is even higher than that for asylum. *Id.* at 435-46 (quoting *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005)). If a petitioner cannot meet the lower burden for asylum, then he cannot demonstrate that he is entitled to withholding of removal. Establishing credibility is the

---

[4] Thioune in large part relies on cases from our sister circuits that do not result in a finding of adverse credibility. Pet. Br. 13-16. However, for the most part these cases do not address the question presented here, whether youth at the time of the persecution can mitigate inconsistencies in the petitioner's testimony. Rather, they consider the impact of youth on other aspects of the statutory requirements, such as whether the applicant was persecuted because of one of the named classifications, or whether the applicant was persecuted at all. *See e.g., Ordonez-Quino v. Holder*, 760 F.3d 80, 89 (1st Cir. 2014) (finding that youth may prevent an applicant from understanding or articulating the "exact motivation" of his or her persecution); *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1313-14 (9th Cir. 2012) (holding that a child's age and position in the family must be considered when determining whether past persecution of other family members may support the applicant's claim for asylum); *Kholyavskiy v. Mukasey*, 540 F.3d 555, 571 (7th Cir. 2008) (noting that age "may bear heavily on the question of whether an applicant was persecuted" (citation omitted)). In most of the cases, cited by Thioune, the IJ determined that the applicant was a credible witness in the first instance, so that credibility was never presented to or discussed by this Court on appeal. Only one case cited by Thioune involves the reversal of a credibility determination by this Court. *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042 (9th Cir. 2007). However, in that case, the Ninth Circuit overturned the IJ's credibility determination because it relied on inconsistencies that did not go to the heart of the petitioner's claim. *Id.* at 1046. The same cannot be said here.

threshold question for proving past persecution, and for the reasons discussed above Thioune has not made it passed that threshold. Nor has he challenged on appeal the BIA's finding that he failed to sufficiently corroborate the specifics of his claims. As a result, Thioune has not met the evidentiary burden necessary to be granted asylum. Because "an applicant seeking withholding of removal faces 'a more stringent burden than what is required on a claim for asylum,'" *Khalili*, 557 F.3d at 435-46 (quoting *Liti*, 411 F.3d at 640), it necessarily follows that Thioune has not met the requisite burden to succeed in an application for withholding of removal.

V.

Regarding Thioune's final claim for relief under CAT "[f]acts relevant to credibility determinations regarding applications for withholding under the [INA] and CAT are reviewed under the same standard." *Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009). Where a petitioner "has failed to satisfy the threshold showing of credibility to warrant withholding of removal under the [INA], it logically follows that he cannot demonstrate that he is entitled to relief under the CAT." *Id.* Thus, Thioune's claims for relief under CAT must fail as well.

VI.

In making a finding of adverse credibility, both the IJ and the BIA reference numerous inconsistencies in Thioune's testimony that go to the heart of his claim. Nothing in the record compels us to conclude to the contrary. Thus, we **AFFIRM** the decision of the BIA and the IJ denying Thioune's application for asylum, withholding removal, and relief under CAT.